**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL B. TENORE,

Petitioner,

v.

ROSANNE CAMPBELL,

Respondent.

_______________________________/

No. C 06-03992 CRB

**MEMORANDUM AND ORDER DENYING PETITION FOR HABEAS CORPUS**

Following a bench trial in California state court, Petitioner Michael Tenore was convicted of four counts of aggravated sexual assault on a child under 14, one count of lewd act on a child, two counts of use of a minor in material involving sexual conduct, and one count of attempted destruction of evidence. Tenore now petitions for a writ of habeas corpus, arguing that he was deprived of his constitutional rights to a jury trial and to confront and cross-examine accusers, and that he received ineffective assistance of counsel. Because the state court decisions rejecting Tenore's claims were neither contrary to clearly established Federal law nor based on an unreasonable determination of the facts, the petition is denied. See 28 U.S.C. § 2254(d).

**BACKGROUND**

The factual underpinning of this case was set forth by the California Court of Appeal in great detail in People v. Tenore, 2004 WL 171596 (Cal. Ct. App. 2004). This Court will

not attempt to replicate the Court of Appeal's efforts, but merely emphasizes the following facts pertinent to the habeas petition.

Tenore hosted a birthday party for his nine-year-old son on June 22, 2000, which was attended by Tenore's eight-year-old and five-year-old nieces. That night, after the children were asleep, Tenore entered the room where his nieces slept. According to Tenore, who had an interest in pornography involving prepubescent females, he planned to take photographs of the girls. One picture later recovered by the police shows Tenore's penis touching one niece's buttocks and back; another picture shows Tenore's penis "lying up and over" the other niece's vagina. In addition, pictures taken by Tenore show Tenore using his fingers to touch his niece's genitalia. Tenore denied engaging in any sexual activity other than what was depicted in the photographs.

But according to the girls' statements to police, Tenore touched his nieces on their privates and mouths. In addition, one niece described being forced to engage in oral sex with Tenore, and alleged that Tenore digitally penetrated her anus. The children also testified before a grand jury, but by then, their memories of the events in question had faded.

A criminalist found Tenore's semen on one niece's nightgown and panties. But at trial, Tenore testified that he unintentionally used the garments after masturbating and that the niece was in another room at the time.

At the conclusion of the bench trial, the court granted Tenore's motion to dismiss three counts of possession of child pornography, acquitted Tenore of aggravated sexual assault of a child by forcible digital anal penetration and destruction of evidence, but found him guilty of four counts of aggravated sexual assault on a child under 14, one count of lewd act on a child, two counts of use of a minor in material involving sexual conduct, and one count of attempted destruction of evidence.

Tenore appealed his conviction, but the California Court of Appeal affirmed in an unpublished opinion dated January 29, 2004. The California Supreme Court denied review on April 14, 2004. Tenore subsequently filed petitions for a writ of habeas corpus in the Santa Clara County Superior Court, the California Court of Appeal, and the California

Supreme Court, which were denied. Tenore filed this timely federal habeas petition on June 27, 2006, alleging: (1) denial of the right to jury trial; (2) denial of the right of confrontation; and (3) ineffective assistance of counsel.

**STANDARD OF REVIEW**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Because Tenore filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), its provisions apply to his case. See Fuller v. Roe, 182 F.3d 699, 702 (9th Cir. 1999) (per curiam). Under AEDPA, Tenore's petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

Generally, this Court reviews the "last reasoned opinion" of the state court. See Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). The last reasoned opinion was issued by the Superior Court of California on habeas review, but that court did not adjudicate the merits of Tenore's jury trial and confrontation clause claims[1]. See 28 U.S.C. § 2254(d). Accordingly, it is not the "proper decision to review" with respect to Tenore's jury trial and confrontation claims. See Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005). Rather, the Court must "look through" the Superior Court decision to the California Court of Appeal's decision on direct review, which did adjudicate the merits of Tenore's Sixth and

[1] Relying on In re Waltreus, 62 Cal. 2d 218, 225 (1965), the Superior Court rejected Tenore's jury trial and confrontation clause arguments on the ground that they had been raised and rejected on direct appeal. A Waltreus denial on state habeas has no bearing on a petitioner's ability to raise a claim in federal court, and the federal court must "look through" a Waltreus citation to the last reasoned state court decision. See Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991).

**United States District Court**
For the Northern District of California

Fourteenth Amendment rights. Tenore's argument that the Court has no state court decision to defer to is baseless; where, as here, a state court has adjudicated a petitioner's claims on direct appeal, that decision is due AEDPA deference even if the claims were not readdressed through the state habeas procedure. See, e.g., Wyrick v. Newland, 2007 WL 760529, *4 (N.D. Cal. 2007). Thus, when reviewing Tenore's jury trial and confrontation claims, the Court will review the California Court of Appeal's decision to determine whether the decision unreasonably applied clearly established federal law or unreasonably determined the facts.

Tenore's ineffective assistance of counsel claim was last "confronted" by the California Superior Court on habeas review. See Hirschfield v. Payne, 420 F.3d 922, 925 n.2 (9th Cir. 2005). Accordingly, when analyzing Tenore's ineffective assistance arguments, the Court will review the Superior Court decision to determine whether it unreasonably applied clearly established federal law or unreasonably determined the facts.[2]

## DISCUSSION

### I. Sixth Amendment Right to Jury Trial

Petitioner contends that his Sixth Amendment right to a jury trial was violated because, although he waived a jury trial, his waiver was invalid. The Court rejects this argument because it finds that Petitioner's waiver was knowing and voluntary.

The Sixth Amendment of the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . an impartial jury of the State and district where in the crime shall have been committed. . . ." The Sixth Amendment's requirement of trial by jury in criminal cases applies to the states by way of

---

[2] The Court is aware of the Ninth Circuit's admonition that "AEDPA generally requires federal courts to review one state decision." Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005) (emphasis added). But that principle applies where one claim is reviewed by multiple courts. Where a petitioner forwards multiple claims, some of which are adjudicated by one court and other claims adjudicated by another, it is proper to give deference to both state court decisions since each represents the state court system's "last reasoned decision." See Edwards v. Lamarque, 475 F.3d 1121, 1135 (9th Cir. 2007) (en banc) (Fisher, J., dissenting) ("When a state trial court reaches a reasoned conclusion that the appellate court subsequently does not address, traditionally we have treated the trial court's determination as the last reasoned decision.").

incorporation through the Fourteenth Amendment's due process clause. See Duncan v. State of Louisiana, 391 U.S. 145, 149 (1968).

The criminal defendant's right to trial by jury is not immutable however, and may be waived by the defendant if done so knowingly and voluntarily. See Johnson v. Zerbst, 304 U.S. 458, 464 -65 (1938). The Court of Appeal concluded that Tenore's "waiver of jury trial was not the product of a mistake or a change of circumstances, but was voluntary and intelligent under the totality of the circumstances." The record before this Court compels the conclusion that the Court of Appeal's holding was free from defect.

During the colloquy between Tenore and his lawyer, Tenore acknowledged that they had engaged in "extensive discussion" about whether or not to waive a jury trial. RT 16:28-17:2. Tenore testified that his lawyer had explained how jurors might not be able to fairly and impartially distinguish between conduct that had occurred – such as the disturbing photographs taken by Tenore – and conduct that had not. RT 18:4-14. Counsel explained to Tenore the pros and cons of a jury trial, but Tenore comprehended his "absolute right to have a jury trial in this matter," and recognized that the strategic decision whether or not to waive a jury trial was "bottom line, my decision to decide." RT 18:17-27, 19:26-20:1. After stating that he wanted to waive his right to a jury, the Judge instructed Tenore that the Constitution gives criminal defendants the right to a trial by a jury of twelve people and that by waiving a jury, the court would determine guilt or innocence. RT 20:14-22.

Tenore argues that his waiver was not knowing, because it was predicated on his belief that in exchange for waiving his right to a jury trial, defense counsel would call and cross-examine his accusers in front of the judge, who Tenore believed could be less prejudiced by the evidence of guilt. But for the reasons explained in Part II, it was not objectively unreasonable for the Court of Appeal to conclude that Tenore knowingly and intelligently waived his right to cross-examine as a strategic tactic. Just so, there is ample evidence to support the conclusion that Tenore "was fully aware of the scope of the right he was waiving and did so as a strategic decision." Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995). The Superior Court explained to Tenore the contours of the jury trial right and Tenore

stated that he understood the concept of a jury trial and that he was waiving the right "freely and voluntarily." RT 21:11-12. Under the circumstances and in light of the incriminating evidence, Tenore's decision to waive a jury was well-calculated and, as a matter of tactics, might have represented the most strategic choice available. Put simply, there is no reason to doubt Tenore's assertion that he had "a complete understanding of all aspects of the decision" to waive a jury. RT 20:9-11. Accordingly, the petition for habeas corpus, as predicated on Tenore's Sixth Amendment right to a jury trial, is DENIED.

II. Sixth Amendment Right to Confrontation

The Sixth Amendment's Confrontation Clause provides that in all criminal prosecutions, "the accused shall enjoy the right . . . to be confronted with the witnesses against him." This right also applies to criminal trials in state court pursuant to the due process clause of the Fourteenth Amendment. See Pointer v. Texas, 380 U.S. 400, 403-06 (1965).

The Confrontation Clause precludes admission of testimonial evidence – such as prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and statements elicited during police interrogations – unless the witness appears at trial, or the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. See Crawford v. Washington, 541 U.S. 36, 53-54 (2004). But this right too may be waived by the defendant, provided that it is clearly established there was "an intentional relinquishment or abandonment of a known right or privilege." Brookhart v. Janis, 384 U.S. 1, 4 (1966) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

Indeed, the defendant need not himself waive the right, as waiver may be accomplished by counsel for strategic purposes. It is now well established that defense counsel may waive a defendant's Sixth Amendment right to confrontation so long as the defendant does not dissent from his attorney's decision and the decision is one of trial tactics or strategy that might be considered sound. See Wilson v. Gray, 345 F.2d 282, 286-88 (9th Cir. 1965); see also Cruzado v. People of Puerto Rico, 210 F.2d 789, 791 (1st Cir. 1954);

United States v. Plitman, 194 F.3d 59, 64 (2d Cir. 1999); United States v. Stephens, 609 F.2d 230, 232-33 (5th Cir. 1980); Hawkins v. Hannigan, 185 F.3d 1146, 1154-55 (10th Cir. 1999).

At the beginning of Tenore's trial, counsel stipulated that, instead of bringing in the victims to testify, the transcript of the girls' testimony before the grand jury would be admitted. The videotape of the police interview with one victim was also admitted. According to defense counsel, the decision to stipulate to the victims' hearsay testimony was made because "it was defense's feeling that the gist of what needed to be brought out before the trier of fact in terms of consistencies or lack of consistencies and corroboration or lack of corroboration . . . could be accomplished through the court's viewing of the different transcripts and reports without having to go through the process of impeaching eight-year-old witnesses and the amount of time that would take, also the pain that would cause. . . ." RT 660:16-28. In short, defense counsel believed that the advantages to not calling Tenore's nieces to testify outweighed any disadvantages in light of the fact that inconsistencies in the victims' testimony could be identified on the cold record. Indeed, it was the prosecution that – due to the loss of the "emotional appeal and draw" that could be expected from the girls' appearance, RT 659:21 – complained that foregoing live testimony "sacrifices some strengths in the People's case." RT 659:21, 26-28. Even if Tenore had not himself waived his confrontation rights, the Court would find that counsel validly did so as a trial strategy.

What is more, Tenore himself waived the right to cross-examine his accusers after consulting with his attorney. RT 661:1-6. Tenore has provided no persuasive reason for disbelieving his testimony that the waiver was knowing and voluntary. RT 661:7-10. There is "[n]o doubt the privilege (of personally confronting witnesses) may be lost by consent. . . ." Illinois v. Allen, 397 U.S. 337, 342 (1970) (quoting Snyder v. Massachusetts, 291 U.S. 97, 106 (1934)). Because the Court can find no basis for rejecting the Court of Appeal's conclusion that Tenore's waiver was knowing and voluntary, the habeas petition is denied as to Tenore's claim based on the Confrontation Clause.

///

III. Ineffective Assistance of Counsel

Finally, Tenore argues that he received constitutionally-defective representation from trial counsel. To prevail on a claim of ineffective assistance, a petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," Strickland v. Washington, 466 U.S. 668, 687 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. In addition to the deference generally associated with analyzing claims under AEDPA, there is an additional layer of deference to the choices of trial counsel. Thus, in analyzing Tenore's ineffective assistance claim, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689. In evaluating the reasonableness of counsel's actions, a reviewing court must consider the circumstances at the time of counsel's conduct, and cannot "second-guess" counsel's decisions or view them under the "fabled twenty-twenty vision of hindsight." Edwards v. Lamarque, 475 F.3d 1121, 1127 (9th Cir. 2007) (en banc) (internal quotation and citations omitted).

Tenore's papers identify a variety of alleged errors committed by counsel, which – as best the Court can discern from Tenore's disorganized briefing – can be grouped into four categories: (1) failure to communicate and consult; (2) ineffective assistance in stipulating to the admission of damaging testimony and failure to object to defects in that testimony; (3) failure to give an opening statement; and (4) failure to object to the sufficiency of the evidence.

On habeas review, the Superior Court of California concluded that trial counsel made valid tactical choices and rendered reasonable professional assistance. For the following reasons, that conclusion was neither predicated on an unreasonable determination of the facts nor contrary to clearly established federal law. See id. at 1126 (holding that the

United States District Court
For the Northern District of California

reasonableness of counsel's assistance is a question of law, whereas whether counsel's actions were "tactical" is a question of fact).

**A. Failure to Communicate & Consult**

Tenore contends that his lawyer failed to communicate with him regarding "significant matters" and to properly consult about legal strategy. But the record belies the existence of the kind of dysfunctional relationship between Tenore and his counsel necessary to justify granting a habeas petition.

"Adequate consultation between attorney and client is an essential element of competent representation of a criminal defendant." United States v. Tucker, 716 F.2d 576, 581 (9th Cir. 1983). Hence, the Ninth Circuit has held that limited consultations may constitute deficient performance by a criminal defense attorney. But in cases where the Ninth Circuit has identified error of a constitutional dimension, the lack of communication and consultation between counsel and client was glaring. In Turner v. Duncan, 158 F.3d 449, 457 (9th Cir. 1998), counsel admitted that he spent "at most forty-five minutes" with the defendant prior to trial. In Correll v. Stewart, 137 F.3d 1404, 1412 (9th Cir. 1998), the attorney only met with the defendant for five minutes between the guilt and penalty phases; in Summerlin v. Schriro, 427 F.3d 623, 633-34 (9th Cir. 2005), there were no consultations at all between the guilt and penalty proceedings.

By contrast, Tenore's attorney accounted to the State Bar for his time, and his notes reflect that counsel met with the defendant several times and for several hours before the trial began. See Def. Exh. D. Moreover, if the notes leave any doubt, Tenore acknowledged that he and counsel had "extensive discussions about the case and the charges against" him. RT 17. Because of those discussions, Tenore had a "full and complete understanding" of the government's case. Id. Given those discussions and the apparently functional line of communication between Tenore and his lawyer, the Court simply cannot say that this is the kind of case where "a serious breakdown in communications," United States v. Nguyen, 262 F.3d 998, 1003 (9th Cir. 2000), or a failure to consult, justifies habeas relief.

**B. Stipulation & Failure to Object**

Tenore contends that counsel provided ineffective assistance by stipulating to the admission of the victims' grand jury statements and prior statements to police, and by failing to object to their contents. The Court finds that counsel's tactical decision to stipulate to the admission of such evidence was not unreasonable and that objection likely would have been futile in light of well-established hearsay exceptions.

Rather than call Tenore's victims to the stand – and risk exposing the judge to the emotional draw of such testimony and providing the victims with an opportunity to clarify prior inconsistent statements – counsel made the tactical decision to stipulate to the admission of prior statements made by Tenore's nieces. Put simply, counsel's decision to stipulate to the prior statements was part of a trial strategy that was not constitutionally defective. The Ninth Circuit has declined to find counsel's performance ineffective even in circumstances where trial counsel advised his client to agree to an entire trial on stipulated facts. See Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995) ("Considering the sheer weight of the evidence against Hensley, his counsel's advice to submit the case on stipulated facts, in the hopes of a reversal, is not objectively unreasonable."). Here, there were sound reasons for stipulating to the admission of the statements, particularly in light of the fact that Tenore's counsel could – and did – highlight inconsistencies and weaknesses in the victims' statements through analysis of the cold record. See RT 660:16-28, 686:11-708:16.

Tenore also challenges counsel's decision to waive any objection to the prior statements on hearsay grounds. See RT 659:9-11. But this Court agrees with the Superior Court of California, which concluded that the prior statements likely could have been admitted through exceptions to the hearsay rule. Apparently, the memory of both children faded over time as to the details of the incident. If the children were called to testify and could not remember particulars about the event, the prosecution likely would have introduced the prior statements through the past recollection recorded exception to the hearsay rule, which permits introduction of a statement "if the statement would have been admissible if made by [the witness] while testifying, the statement concerns a matter as to which the

witness has insufficient present recollection to enable him to testify fully and accurately, and the statement is contained in a writing which . . . [w]as made . . . by some other person for the purpose of recording the witness' statement at the time it was made." Cal. Evid. Code § 1237(a)(2). Thus, the Court does not agree with Tenore that counsel's failure to object on hearsay grounds constituted ineffective assistance of counsel.[3]

**C. Failure to Give Opening Statement**

Tenore challenges counsel's decision to waive an opening statement. "The timing of an opening statement, and even the decision whether to make one at all, is ordinarily a mere matter of trial tactics and in such cases will not constitute the incompetence basis for a claim of ineffective assistance of counsel." United States v. Rodriguez-Ramirez, 777 F.2d 454, 458 (9th Cir. 1985) (emphasis added); see also United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) (same); Huffington v. Nuth, 140 F.3d 572, 583 (4th Cir. 1998) (the decision to waive an opening statement "is essentially tactical in nature, and not objectively unreasonable"); United States v. Mealy, 851 F.2d 890, 908 (7th Cir. 1988) ("[T]he mere fact that counsel did not make an opening statement is not sufficient for a defendant to prevail on a claim of ineffective assistance. Whether to make an opening statement to the jury is at the discretion of trial counsel."); Fox v. Ward. 200 F.3d 1286, 1296 (10th Cir. 2000) ("[I]t is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel."). In light of the fact that Tenore had consented to a bench trial, the necessity of an opening statement was lessened by the fact that the judge was already acquainted with the case from pre-trial proceedings. Under the circumstances, the Court finds that counsel's decision to waive an opening statement was not sufficiently unreasonable to constitute ineffective assistance.

---

[3] Tenore also suggests that the prior statements might have been inadmissible pursuant to California Evidence Code §§ 701, 702, 766, and 767. Based on the Court's review of the record, there is no persuasive reason to believe that the victims' statements would have been stricken due to leading questions, non-responsiveness, lack of foundation, or the victims' incapability of expressing themselves.

United States District Court
For the Northern District of California

**D. Failure to Challenge Sufficiency of Evidence**

In a passing one-line argument, Tenore argues that his lawyer provided ineffective assistance because he failed to challenge the sufficiency of the evidence against Tenore. Without additional elucidation, the Court cannot properly evaluate Tenore's claim. However, based on the record, the Court has difficulty envisioning how Tenore could prevail on this argument. The evidence against Tenore was overwhelming and his attempts to explain away incriminating evidence – such as his semen on one victim's sleepwear – were unconvincing at best, and comical at worst. The Court is unable to identify a single count upon which Tenore was convicted that lacks a sufficient evidentiary basis.

## CONCLUSION

The state court's conclusion that Tenore validly, knowingly, and intelligently waived his right to a jury trial and his confrontation rights, and that Tenore received effective assistance of counsel, was not contrary to clearly established Federal law or predicated on an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is DENIED.

**IT IS SO ORDERED.**

Dated: June 18, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE